951 F.2d 638
 60 USLW 2499, 21 Fed.R.Serv.3d 1367
 Clayton J. CHARBONNET, Jr., et al., Plaintiffs-Appellants,
v.
Sheriff Harry LEE and Lt. Edwin McClendon, Defendants-Appellees.
DONALD E. STRAIN, D.D.S., a Professional Dental Corp., James
D. Kiser, D.D.S., a Professional Dental Corp., Joseph J.
Collura, D.D.S., a Professional Dental Corp., and Lakeside
Dental Group, Defendants-Third-Party Plaintiffs-Appellants,
v.
CONTINENTAL CASUALTY CO., Third-Party Defendant-Appellee.
 No. 90-3061.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1992.
 
 Michael R. Allweiss, New Orleans, La., for Charbonnet.
 Melvin W. Mathes, Metairie, La., for Strain/Kiser/Lakeside & Collura.
 Charles T. Weigel, Jr., Michael S. Guillory, Richard B. Ehret, McGlinchey, Stafford, Mintz, Cellini & Lang, Bruce S. Johnston, New Orleans, La., for Continental Cas.
 Daniel R. Martiny, T. Allen Usry, Metairie, La., for Lee & McClendon.
 Appeals from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM, JOLLY, and DAVIS, Circuit Judges.
 WISDOM, Circuit Judge:
 
 
 1
 This appeal concerns the ongoing question of when a federal court must limit a plaintiff to state law relief for violations of procedural due process. In this case we consider a judgment notwithstanding the verdict in favor of a Louisiana parish police officer sued for his participation in an alleged deprivation of property without due process of law. Because a recent en banc opinion by this Court[1] limits the liability of state actors for violations of the Fourteenth Amendment not authorized or foreseen by constitutional state procedures (if state law offers a postdeprivation remedy), we AFFIRM the judgment n.o.v. in favor of Lieutenant Edwin McClendon.
 
 
 2
 This case also involves an appeal from a summary judgment in favor of Continental Casualty Insurance Company. We AFFIRM that summary judgment for the reasons stated in the trial court's order of November 21, 1989.
 
 I. BACKGROUND
 
 3
 This case concerns events that took place on August 31, 1988 at the office of Dr. Clayton J. Charbonnet, Jr., in Metairie, Louisiana. On August 30, 1988, Dr. Charbonnet resigned from the Lakeside Dental Group, a partnership he had joined in July 1987. His three partners ("the partners"), who worked at another location, accepted his resignation unanimously. They were concerned, however, over certain medical equipment belonging to them that was in Dr. Charbonnet's office. On August 31, 1988, they consulted an attorney who told them that they could take the furniture from Dr. Charbonnet's office themselves, without benefit of any legal authorization. One of the partners telephoned the Jefferson Parish Sheriff's Office ("JPSO"). He apparently led that office to believe that the partners had court papers giving them the right to take their property from Dr. Charbonnet's office. His message was passed on to Lieutenant Edwin McClendon of the JPSO's civil division. McClendon communicated with the partnership; the office manager told him when to meet the partners at Dr. Charbonnet's office.
 
 
 4
 The JPSO code of conduct contains an article preventing its officers from taking any action in civil matters except to prevent or record a violation of law.[2] Jefferson Parish Sheriff Harry Lee has issued a policy statement and explanation of those procedures. In that statement he directs his officers "to avoid involvement in Civil matters as much as possible. I cannot stress enough that if the circumstances require any intervention in such matter employees must always remain impartial." The policy further states that a deputy responding to a civil call "shall inform all parties involved that his role is that of a 'peace keeper' and he will take no action other than that. The deputy shall at all times remain neutral in his actions."
 
 
 5
 When Lieutenant McClendon met the partners outside Dr. Charbonnet's office on the night of August 31, he discovered that they lacked the writ of sequestration or attachment (or any legal order) necessary to authorize the seizure they were about to undertake. The partners showed him their partnership agreement, nothing else. After reviewing it, McClendon stayed on the scene, and accompanied the partners into Dr. Charbonnet's office. McClendon refused to leave after Dr. Charbonnet asked both him and the partners to get out of his office. Dr. Charbonnet called his attorney, and then again asked McClendon to leave. He did not. Dr. Charbonnet then called the emergency "911" number. When two criminal officers arrived, McClendon met with them alone. They departed, without having taken any action.
 
 
 6
 Before McClendon and the three partners left Dr. Charbonnet's office that night, they or the workers they employed had removed most of the medical equipment. In the process they cut carpets, damaged the walls and ceiling of the office and, of course, deprived Dr. Charbonnet of the tools of his trade.
 
 
 7
 Dr. Charbonnet sued Sheriff Lee and Lieutenant McClendon under 42 U.S.C. § 1983, charging them with a violation of his civil rights.[3] To this suit in district court he attached pendent state law claims against the partners and Continental Casualty ("CNA"), the partners' liability insurer. The partners also filed a counterclaim against CNA. Before trial the partners settled with Dr. Charbonnet, and the trial court granted a summary judgment in favor of CNA. Dr. Charbonnet rested his case after 2 days of trial; Lee and McClendon both moved for directed verdicts. The court granted Lee's motion because his policy of nonintervention in civil matters was constitutional; Lee's procedure could not subject him to liability under § 1983.[4] The court denied McClendon's motion, which was based on the qualified immunity defense he presented at trial. The jury returned a verdict against McClendon; it awarded Charbonnet compensatory damages of $50,000 and punitive damages of $175,000.
 
 
 8
 The trial court then granted McClendon's motion for a JNOV. After having viewed the evidence presented at trial, the court found that the doctrine of Parratt v. Taylor[5] legally precluded a finding of liability against McClendon for his participation in the events of August 31, 1988.[6] On January 31, 1990, the court entered judgment on its JNOV and the dismissal of Sheriff Lee. Dr. Charbonnet appeals that judgment.
 
 II. DISCUSSION
 
 9
 When a state official is involved in a deprivation of property without adequate predeprivation safeguards, he may be liable (in his personal or official capacity) under the Fourteenth Amendment for violating the due process rights of the person deprived of property. When the state's predeprivation safeguards are sufficient, the state actor cannot be liable in his official capacity. Even though he can still be liable in his personal, or individual, capacity as a state actor, the Supreme Court absolves him of such liability when the property "loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur".[7] In such a case, an adequate postdeprivation remedy can provide the due process required by the Fourteenth Amendment. The State cannot do more because "[t]he loss of property, although attributable to the State as action under 'color of law,' is in almost all [such] cases beyond the control of the State. Indeed, in most cases it is not only impracticable, but impossible to provide a meaningful hearing before the deprivation."[8] The Parratt doctrine, now (because of the opinion that extended Parratt to intentional deprivations of property)[9] called the Parratt/ Hudson doctrine, was based on the balancing test spelled out in Mathews v. Eldridge.[10] Mathews sets the interest of the individual affected by the action against the interest of the government in maintaining whatever predeprivation procedure it does offer; balanced between them are the risks of the procedure and the probable value, if any, of additional safeguards.[11]
 
 
 10
 In recent years federal courts have tried to map the boundaries of the Parratt/ Hudson doctrine. Last year the Supreme Court cast some doubt on its breadth. In Zinermon v. Burch[12] the Court held unconstitutional the actions of state officials under a Florida law allowing voluntary admissions into state mental hospitals. The Court found that the Florida law delegated to state officials too much authority in deciding when to deny a patient the additional safeguards of an involuntary commitment. Zinermon refused to apply Parratt/ Hudson because the case lacked three predeprivation conditions necessary to that doctrine. In a case where those conditions do exist, however, "a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process".[13] The conditions are, first, that the deprivation be unpredictable; second, that predeprivation process be impossible, making any additional safeguard useless; and, third, that the conduct of the state actor be unauthorized.[14] In such a case "the State cannot be required constitutionally to do the impossible by providing predeprivation process."[15]
 
 
 11
 Zinermon treated Parratt and Hudson as two unusual cases in which the governmental interests prevailed under Mathews.[16] The Zinermon majority[17] may have intended to weaken Parratt/ Hudson. To the extent the doctrine needed resuscitation, we are bound to notice its resuscitation in this Circuit by this Court's en banc decision in Caine v. Hardy. Caine reads Zinermon to effect only a "wrinkle" on the Parratt/ Hudson doctrine.[18]
 
 
 12
 In Caine, this Court held that Parratt/ Hudson prevents the procedural due process claim of a doctor deprived of his staff privileges at a public hospital because the three predeprivation conditions highlighted by Zinermon were each present.[19] Caine reads those conditions narrowly enough to make this case, although it involves a different sort of deprivation in an entirely different context, legally indistinguishable. The Parratt/ Hudson doctrine applies to Dr. Charbonnet's case. For the deprivation of his property he must now look to state law for relief.
 
 A. PROCEDURAL CORRECTNESS OF THE JNOV
 
 13
 Before we reach the merits of the case we address a procedural issue. Dr. Charbonnet contends that the court's JNOV was inappropriate because it was requested and granted on grounds not raised by McClendon's motion for a directed verdict.[20] We disagree.
 
 
 14
 In moving for a directed verdict McClendon contended that his actions could not subject him to liability under § 1983. At that point McClendon argued that he could not be liable not only because his actions were within the JPSO policy, but also because he had not actively participated in the seizure of Dr. Charbonnet's property. It does seem that both McClendon and the trial court were then unaware of the application of the Parratt/ Hudson doctrine to this case. Nevertheless, the argument McClendon made in moving for a JNOV was not so different in nature from the argument he made at the directed verdict stage, nor based on such a different version of the facts, to suggest the sort of ambush that Rule 50(b) is meant to prevent.[21] Dr. Charbonnet was not ambushed by a new argument questioning the evidence he presented at trial. If Dr. Charbonnet was trapped by the substance behind McClendon's argument for a JNOV, he was trapped not by any tactical trickery but by the Parratt/ Hudson doctrine. In arguing for a JNOV McClendon was simply continuing to argue that his actions (now proved by Dr. Charbonnet) could not subject him to liability under § 1983.
 
 
 15
 Under the Parratt/ Hudson doctrine, § 1983 cannot subject a public official like McClendon to individual capacity liability for violating government policy. In opposition to McClendon's motion for a directed verdict, Dr. Charbonnet's lawyer argued that if neither Sheriff Lee nor his policy were responsible, "then Lt. McClendon was in direct violation of the policy". Dr. Charbonnet thus acknowledged at the directed verdict stage the grounds of McClendon's § 1983 defense at the JNOV stage. That McClendon's revival of his defense to § 1983 liability was made under a different line of cases--cases that preclude a federal court from subjecting certain public officials to liability because their actions do not implicate the Fourteenth Amendment--does not violate Rule 50(b).
 
 B. LEGAL CORRECTNESS OF THE JNOV
 
 16
 We should at first note that this appeal does not address whether or not Jefferson Parish should have provided a procedure which would have prevented the partners from entering Dr. Charbonnet's office and taking the furnishings from it. The partners failed to seek the legal writ necessary to effect such a seizure. This case does address whether the JPSO, through additional safeguards, could have prevented McClendon's violation of the neutrality it required of him. We think not. In this case the partners' unforeseeable actions made it nearly impossible for the JPSO to have foreseen, and prevented, McClendon's unauthorized actions, actions that were really reactions to the intervention of citizens over whom the JPSO had no control. A series of independent, unpredictable private actions stood behind McClendon's similarly unpredictable abuse of his official position; this case satisfies the three conditions for applying the Parratt/ Hudson doctrine.
 
 
 17
 First, although the risks that a private citizen will improperly seize the property of another may be foreseeable to the government, the violation of rules of neutrality by a police officer after a private party has misrepresented its right to effect such a seizure, is not predictable. As in Caine, any harm to the plaintiff came not from a lack of foreseeably necessary safeguards but from a violation of controlling state regulations.[22]
 
 
 18
 Second, it is difficult to imagine what procedure could have prevented this apparently unique misapplication of the neutrality requirement (in a situation already full of elements which the state cannot control) by a police officer. Under Zinermon (as interpreted by Caine ) we find that the JPSO policy does not prevent a high risk of erroneous deprivation, nor would minimal further safeguards have been likely to prevent the deprivation.[23] State law requires compliance with procedural safeguards that both the partners and McClendon ignored.
 
 
 19
 The third condition is the most important, and should probably come first. Because a finding that the state action was random and unauthorized usually establishes the two other conditions,[24] it has formed the legal battleground of many similar cases. Where the conduct of a state official is random and unauthorized (because the State has instituted a policy forbidding such conduct), then in most cases it will follow that the State could not have predicted, and that further procedural safeguards would have been impotent to prevent, that conduct.
 
 
 20
 Although it may have been within Lieutenant McClendon's authority to be present at the partners' seizure of the property in Dr. Charbonnet's office, the JPSO policy specifically requires officers in such situations to remain more neutral than McClendon did remain. Zinermon cautions us not to find that an action is "unauthorized" simply because it is not sanctioned by state law.[25] Yet the Zinermon majority found that the state actions before it were not "unauthorized" only because the state had actually delegated its officials with the broad authority to carry out the deprivation alleged by Mr. Burch.[26] The JPSO policy before us, however, specifically prohibits the kind of official intervention McClendon made at Dr. Charbonnet's office.[27] Dr. Charbonnet's suit against McClendon was in fact based on the unauthorized and random nature of his actions. The limited terms of that suit, however mistakenly Dr. Charbonnet pursued them, support our application of the Parratt/ Hudson doctrine here.
 
 
 21
 Finally we note that Louisiana does offer a postdeprivation remedy to Dr. Charbonnet for McClendon's participation in the destruction of his office, and that Dr. Charbonnet has taken advantage of this alternative. On January 8, 1989, Dr. Charbonnet filed an original petition in the 24th Judicial District Court for the Parish of Jefferson. He later amended that suit to include Sheriff Lee and Lieutenant McClendon as defendants. Dr. Charbonnet has not contested the legal adequacy of this remedy. Nothing we decide here will deprive him of that remedy, under state tort law, for injuries inflicted by Lee or McClendon.
 
 
 22
 Dr. Charbonnet's letter brief correctly describes the "inescapable corner" into which constitutional law has now painted such a plaintiff. If the policy he challenges is constitutional, there is no official liability; a defendant in his official capacity is merely a representative of that policy. If a state actor is found to have reasonably obeyed an established procedure in his individual capacity, then he wins on the merits. If the official is found to have violated that procedure (and there is an adequate remedy under state law), then he is usually protected in his individual capacity by the Parratt/ Hudson doctrine. The plaintiff who seeks damages from a state actor under § 1983 for violations of procedural due process can lose the war of liability by winning the battle of proof. We acknowledge that Caine v. Hardy does much to swing shut the door of the federal courts to suits for individual violations of procedural due process. Yet those doors remain open to a plaintiff such as Dr. Charbonnet if the actions of the official were the result of some established municipal procedure, or if the state does not offer an adequate remedy elsewhere. A plaintiff like Dr. Charbonnet has not lost his day in court.
 
 III. CONCLUSION
 
 23
 We find that this case is entirely controlled by Caine v. Hardy and its narrow reading of Zinermon. If there were no postdeprivation procedure available to Dr. Charbonnet under state law, or if any of the three conditions that Zinermon and Caine read into the Parratt/ Hudson doctrine were not present, then the suit against McClendon, based on the evidence Dr. Charbonnet presented at trial, could stand. But there is such postdeprivation relief, and (applying Caine 's interpretation of these words) McClendon's actions were both "unauthorized" and "unforeseeable", and better predeprivation safeguards were "impossible". The district court properly decided that it was not the proper forum, and § 1983 was not the proper source of liability, for Dr. Charbonnet's case against McClendon. We AFFIRM the JNOV.
 
 
 24
 As for the district court's order granting CNA's motion for summary judgment because all of the alleged actions of the partners would have been excluded from the coverage of their insurance policy with CNA, we AFFIRM for the reasons carefully set forth in the order.
 
 
 
 [1]
 Caine v. Hardy, 943 F.2d 1406 (5th Cir.1991) (en banc)
 
 
 [2]
 The article, part of the Rules for the Administration of the Jefferson Parish Sheriff's Officer--Code of Conduct, reads as follows:
 TITLE III OFFICIAL OBLIGATION
 Chapter D. Restricted Activities
 Art. 75 Acting in Civil Matters
 A member while in performance of his duty shall take no action in a legal matter which is not currently subject to penal jurisdiction, except to prevent or record the violation of a law or ordinance, or in compliance with department procedures.
 
 
 [3]
 Dr. Charbonnet dismissed without prejudice his similar charges against another defendant, the JPSO itself
 We read Dr. Charbonnet's complaint, and his entire lawsuit, to state a claim against Sheriff Lee in his official capacity and against Lt. McClendon in both his official and individual capacities.
 As for Sheriff Lee, Dr. Charbonnet alleged that he established a policy that resulted in the deprivation of his property without due process. He did not allege that Sheriff Lee did anything personally to deprive him of his rights, and Sheriff Lee cannot be liable under a theory of respondeat superior for the actions of his officers.
 As for Lt. McClendon, Dr. Charbonnet's "Second Supplemental and Amended Complaint" states that he "was acting in the course and scope of his employment or with the apparent authority of the JPSO" (emphasis added). He also contended that McClendon's activities were "taken under color of state law sufficient to impose liability on him and the JPSO for his and/or its actions which form the basis of this litigation" (emphasis added). Although Dr. Charbonnet contended throughout trial that McClendon was obeying an unconstitutional policy, he also showed that in personally enforcing that policy McClendon was responsible for depriving the doctor of his rights. When that policy was found to be constitutional, see n. 4 and the accompanying text below, McClendon's potential liability was limited to his individual capacity. Dr. Charbonnet put on evidence of McClendon's personal involvement in the deprivation of his property sufficient for the jury to find that McClendon was personally liable to him for $50,000 of compensatory damages and $175,000 of punitive damages. The irony of this case is that Dr. Charbonnet's success on the facts ensures his loss on the law. The trial court's JNOV declared, as we agree, that, under the Parratt/ Hudson doctrine, McClendon cannot be legally liable in his individual capacity for those actions.
 
 
 [4]
 The JPSO policy is a constitutional effort, sanctioned by this Court, to keep its officers from subjecting the parish to § 1983 liability. In Mississippi Women's Medical Clinic v. McMillan, 866 F.2d 788 (5th Cir.1989), a case cited by the trial court in granting Sheriff Lee's motion for directed verdict, this Court found that a similar policy of neutrality in civil matters kept the police from committing state action under § 1983. The Court wrote that "[b]y simply keeping the peace and declining to advance the cause of either [side], the police department avoided being converted from a governmental agency into a state actor for purposes of establishing a claim under § 1983". Id. at 793. The JPSO policy similarly, and sufficiently, prohibited its officers from involving themselves so much in civil matters that they took on the role of state actors. The trial judge correctly granted Sheriff Lee's motion for a directed verdict
 Insofar as that decision found that the policy did not violate the Fourteenth Amendment, it absolved Lee of liability in his official capacity. The court acknowledged as much by releasing with Lee the JPSO, even though Dr. Charbonnet had already dismissed the JPSO. The court's decision, as a matter of law, also absolved McClendon of liability in his official capacity for any of his actions that were consistent with that policy.
 
 
 [5]
 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part not relevant here by Daniels v. Williams, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)
 
 
 [6]
 The trial court held in the alternative that the excessiveness of the damages would require a new trial. Because we affirm his JNOV in favor of McClendon we need not reach this alternative holding
 
 
 [7]
 Parratt, 451 U.S. at 541, 101 S.Ct. at 1916
 
 
 [8]
 Id
 
 
 [9]
 Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)
 
 
 [10]
 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)
 
 
 [11]
 Id. at 335, 96 S.Ct. at 903
 
 
 [12]
 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)
 
 
 [13]
 Id. at 128, 110 S.Ct. at 984 (citations omitted)
 
 
 [14]
 Id. at 136-38, 110 S.Ct. at 989-90
 
 
 [15]
 Id. at 129, 110 S.Ct. at 985
 
 
 [16]
 See, e.g., id. at 128, 110 S.Ct. at 984: "Parratt and Hudson represent a special case of the general Mathews v. Eldridge analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide."
 
 
 [17]
 Four Justices dissented; they held that the Parratt/ Hudson doctrine did apply to unauthorized actions under an unchallenged state law. Zinermon, 494 U.S. at 139-151, 110 S.Ct. at 990-997 (O'Connor, J., dissenting). The legal and institutional instability of that majority opinion has not gone unnoticed. See, e.g., Easter House v. Felder, 910 F.2d 1387, 1409 (7th Cir.1990) (Easterbrook, J., concurring)
 
 
 [18]
 Caine, 943 F.2d at 1416
 
 
 [19]
 Id., 494 U.S. at 150-51, 110 S.Ct. at 996-97. Caine at 1413-14
 
 
 [20]
 Fed.R.Civ.P. 50(b) provides in pertinent part that "a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict". This rule is interpreted to prevent a party from raising a new argument after the jury has reached a verdict. See 9 C. Wright & A. Miller, Federal Practice and Procedure § 2537, at 598 (West 1971). Accord Dimmitt Agri Indus., Inc. v. CPC Int'l, Inc., 679 F.2d 516 (5th Cir.1982), cert. denied, 460 U.S. 1082, 103 S.Ct. 1770, 76 L.Ed.2d 344 (1983); Sulmeyer v. Coca Cola Co., 515 F.2d 835 (5th Cir.1975), cert. denied, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 341 (1976)
 
 
 [21]
 See, e.g., 5A Moore's Federal Practice p 50.08, p. 50-77 (emphasizing that the rule is intended to allow a party to defend against an argument of deficient proof before it is too late to cure it). Accord Quinn v. Southwest Wood Prods., Inc., 597 F.2d 1018, 1025 (5th Cir.1979)
 
 
 [22]
 See Caine at 1413-14
 
 
 [23]
 Zinermon states that if either of these factors exists (that is, if the state should have foreseen such a deprivation), then no postdeprivation remedy can satisfy due process. 494 U.S. at 127-130, 110 S.Ct. at 984-986 (citing Parratt, 451 U.S. at 541, 101 S.Ct. at 1916; Mathews, 424 U.S. at 335, 96 S.Ct. at 903). See Caine at 1413
 
 
 [24]
 See, e.g., Thibodeaux v. Bordelon, 740 F.2d 329, 336 (5th Cir.1984), in which this Court noted that a predeprivation hearing is always impracticable and unfeasible for random and unauthorized acts. In another case from the same year we combined the third and first questions by equating "random and unauthorized" with "unpredictable". Augustine v. Doe, 740 F.2d 322, 327 (5th Cir.1984). We have also said that even "a conspiracy among its employees can indeed be a random act if the state cannot anticipate or control such conduct in advance". Holloway v. Walker, 790 F.2d 1170, 1172 (5th Cir.1986) (emphasis added). A State cannot be held liable under § 1983 for the general likelihood that state officials will sometimes violate official policies
 
 
 [25]
 Zinermon, 494 U.S. at 138, 110 S.Ct. at 990
 
 
 [26]
 Id
 
 
 [27]
 This Court has contrasted "random and unauthorized" acts with those that "represented official policy". See Augustine, 740 F.2d at 328-29