Howard Eugene CRAIG

v.

ST. MARTIN PARISH SHERIFF,
Charles A. Fuselier, et al.

No. 90–CV–1967.

United States District Court,
W.D. Louisiana,
Lafayette–Opeloussas Division.

Aug. 22, 1994.

Daniel C. Hughes, Hughes & Associates, Lafayette, LA, for plaintiff.

Chester R. Cedars, Breaux Bridge, LA, William E. Scott III, Watson, Blanche, Wilson & Posner, Baton Rouge, LA, for defendants.

*MEMORANDUM OPINION AND ORDER*

COBB, Visiting Judge.

Plaintiff Howard E. Craig has brought suit under 42 U.S.C. § 1983 against St. Martin Parish Sheriff Charles A. Fuselier, Captain Scott Haydel, Deputy Paul O'Mary, 16th Judicial District Attorney Bernard Boudreaux and Assistant District Attorney John P. Haney in both their individual and official capacities. The suit is based on events which took place on March 23, 1990 in St. Martin Parish, Louisiana.[1] There are two motions pending before the Court: 1) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted/Alternatively, Motion For Summary Judgment by defendants Boudreaux and Haney; 2) Motion to Dismiss And/Or For Summary Judgment by defendants Fuselier, Haydel, and O'Mary.[2]

### Factual Background

On the morning of March 23, 1990, Officer Paul O'Mary of the St. Martin Sheriff's Department was on routine patrol on Interstate 10 accompanied by his department's narcotics dog. It was extremely foggy that morning. At approximately 3:15 A.M., Deputy O'Mary observed the plaintiff, Howard E. Craig, driving a Chevrolet Caprice in an erratic manner in the outside lane of westbound I–10; Craig weaved from the shoulder of the Interstate into the inside lane. O'Mary pulled behind Craig and followed him for approximately one mile. Craig's erratic driving continued and O'Mary stopped him.

Craig produced a valid Alabama driver's license and an Alabama certificate of title for the Caprice. Tommy Sanderson, who was listed on the title as the owner, had endorsed the back of the title. Craig explained that he had recently purchased the Caprice from Sanderson and that its poor shock absorbers caused his weaving. Craig also told O'Mary that he was in the car business and was travelling from his hometown of Leighton, Alabama to Beaumont, Texas to buy cars. However, in response to O'Mary's questions, Craig could not name a specific car seller, nor did he know where he would be staying in Texas. Craig could not produce proof of insurance for the vehicle.

O'Mary sought and received oral permission from Craig to search the car[3]. During the search, O'Mary observed an amplified citizens band (CB) radio and a radar detector (Craig at 68) on the front seat. In the trunk, O'Mary found $18,000.00 in small bills bundled in a paper bag. (A later search of the car during Craig's detention at the Sheriff's department produced an additional $13,250.00.) O'Mary did not utilize the drug dog to "sniff" Craig's car while on the Interstate,[4] nor did he discover any narcotics, contraband or weapons. After finding the cash, O'Mary called for back-up.

The parties dispute whether Craig claimed ownership of the cash after its roadside discovery. Craig stated in his deposition that he told O'Mary that the money belonged to him. However, the defendants' deposition testimony indicates that Craig disclaimed the money immediately upon its discovery.[5]

O'Mary decided to "detain"[6] Craig and transport him to the Sheriff's department in St. Martinville. The trip took approximately thirty minutes; Craig, accompanied by O'Mary, arrived at the Sheriff's Department at approximately 4 a.m. Although it is difficult to glean from the current record the exact events at the station, it is undisputed that Craig was held incommunicado for approximately 8 hours and was questioned at

---

1. *See also Thomas v. Frederick,* 766 F.Supp. 540, 556 (W.D.La.1991) (chronicling the "repeated and widespread abuses [which] have occurred in the St. Martin's Parish Sheriff's Department.")

2. Because the parties have presented affidavits and extensive deposition excerpts to the court for consideration, the court will treat defendants' motions as motions for summary judgment. *See* Fed.R.Civ.P. 12(b), 56; *Washington v. Allstate Insurance Co.,* 901 F.2d 1281, 1283–84 (5th Cir. 1990).

3. At some time after the discovery of the money, Craig executed a standard consent to search form.

4. The canine sniff of the car at the Sheriff's Department failed to produce any narcotics or contraband.

5. *See* Haney at 23–24, O'Mary at 25, Haydel at 18, 20, and Dupuis at 15, 20, 42.

6. O'Mary at 25.

length about the money and the circumstances surrounding his trip. The questioning at the station occurred primarily in four rooms: the large detectives' office, "Butch" Dupuis' office, Scott Haydel's office and an adjacent conference room. Craig was apparently shuttled around the four offices, where Captain Scott Haydel, Captain "Butch" Dupuis, and Assistant District Attorney John P. Haney,[7] questioned Craig in turn.[8] At times, all three men participated in the questioning.

During the questioning in Haydel's office, Craig maintains, and Haydel admits, that Craig requested an attorney.[9] Haydel testified that he informed Craig that he was free to call a lawyer, noting that two telephones were nearby. However, Craig denies that he had an opportunity to call an attorney. No attorney was called and it is undisputed that the questioning continued after Craig's request. The parties dispute whether Craig was free to leave the station. While Captain Haydel maintains that Craig could have left at any time, Craig was apparently escorted by a Sheriff's Deputy during his visits to the restroom.

As the questioning continued, Craig explained that he, along with his business associate Jeff Leatherwood, planned to purchase cars in Beaumont. Haney and the other officers made a series of telephone calls to verify Craig's account. Calls to Tommy Sanderson, the previous owner of the car, and Percy Lee Ricks [10], Chief of the Leighton, Alabama police department, produced at best only minor inconsistencies with Craig's story.[11] Hilliard T. Wimberly, Deputy of the Colbert County, Alabama [12] Sheriff's Department informed Haney and the other officers that Craig was not suspected of drug activity. However, Wimberly had personally arrested Jeff Leatherwood on a drug charge several years earlier. Leatherwood was charged, tried and acquitted. Despite the acquittal, Wimberly continued to suspect Leatherwood of drug activities using his wrecking business as a cover.

Sheriff Charles Fuselier was present at the station at some point during the morning in question. Captain Haydel informed the Sheriff of Craig's ongoing investigation. The sheriff did not give Haydel any advice regarding the investigation. District Attorney Boudreaux, on the other hand, was not present at the station that morning.

Haney and Dupuis eventually prepared a "Disclaimer of Ownership of Currency or Property" in which Craig disclaimed ownership of $31,520.00 in cash and the 1978 Chevrolet Caprice, and waived notice of the forfeiture proceeding [13]. Craig admits that he signed the document, but maintains that his approval was involuntary: Haney, Haydel and O'Mary told him that he would not be released from the Sheriff's department until

7. Captain Dupuis contacted Assistant District Attorney Haney to advise him of the situation and to "see if we had enough, either on the civil side for the detention or the seizure of the monies and the vehicle, or if there would be any possible criminal charges with the information that we had at that time." Dupuis at 67. Haney arrived at the station at approximately 4:30 a.m.

8. Haney questioned Craig 2–3 times. Haney at 18. Dupuis questioned Craig once "at length" and several times thereafter. Dupuis at 50. Captain Haydel questioned Craig twice for approximately 20–30 minutes each. Haydel at 17–24, 28.

9. Craig claims that he requested an attorney four times. Haydel recalls that Craig requested counsel once.

10. Chief Ricks was called between 7:30 and 8:00 a.m.

11. Craig told Haney and the officers that he had bought the car from Sanderson. Sanderson verified that he had sold the car to Craig's associate, Leatherwood and Vandiver. Craig also informed the officers that Leatherwood planned to meet him in Beaumont with a car carrier. Chief Ricks was asked to drive to Leatherwood's house and verify if the car carrier had departed. Although by time of deposition Ricks could not recall his answer to the St. Martinville authorities, Haney maintains Chief Ricks reported that the car carrier was present at Leatherwood's house.

12. Leighton, Craig's hometown, is located in Colbert County.

13. The disclaimer provided, in part: "I hereby state that I am not the owner of this currency or property, I have no interest in it, and have no claim for its return to me ... I am waiving any right to notice of seizure or intention to seek forfeiture of this currency and the vehicle."

he signed the disclaimer.[14] The defendants deny this allegation.[15]

Around the conclusion of the detention, O'Mary issued Craig two traffic citations, to-wit: "Improper lane usage" and "No proof of insurance." After Craig signed the disclaimer, and approximately eight hours after the original traffic stop, an unidentified Sheriff's deputy dropped him off at the Lafayette bus station. The District Attorney has never brought criminal charges against Craig.

On Monday, March 26, 1990, three days after the traffic stop, the 16th District Court in and for St. Martin's Parish held a forfeiture hearing styled "State of Louisiana v. Howard Eugene Craig." Based on a skeletal affidavit signed by Captain Butch DuPuis, and the disclaimer form signed by Craig, the court found that probable cause existed for the forfeiture.[16] Craig, who apparently did not receive notice of the proceeding, did not make an appearance.

Craig filed this § 1983 suit on August 28, 1990, alleging that the detention and seizure of both his person and property violated his Constitutional rights.

## Summary Judgment

Summary judgment is appropriate when the movant is able to demonstrate that the pleadings, affidavits, and other evidence available to the Court establish that there are no genuine issues of material fact, and that the moving party is entitled to summary judgment as a matter of law.[17] Fed.R.Civ.P. 56(c); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–88, 106 S.Ct. 1348, 1355–57, 89 L.Ed.2d 538 (1986). The Court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* —— U.S. ——, ——, 112 S.Ct. 2072, 2077, 119 L.Ed.2d 265 (1992); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. Finally, credibility determinations are inappropriate at this stage. *Richardson v. Oldham*, 12 F.3d 1373, 1379 (5th Cir.1994).

## Individual Capacity Claims

42 U.S.C. § 1983[18] provides a Federal remedy for deprivations of Constitutional rights by authorizing suits against local public officials and governmental entities. *See Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In order to recover under § 1983, a civil rights plaintiff must prove two elements: (1) deprivation of a Federally protected right "secured by the Constitution and laws of the United States," and (2) state action taken under color of law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982) (quoting *Flagg Brothers v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1732–34, 56 L.Ed.2d 185 (1978)).

■ The defendants assert that the doctrine of qualified immunity shields them from suit in their individual capacities. *See Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). The Supreme Court has "clarif[ied] the analytical structure under which a claim of immunity

---

**14.** See Craig at 85, 91, 94, 96, 146.

**15.** *See* Haydel at 58–9.

**16.** The property was allocated as follows:

| | |
|---|---|
| St. Martin Parish Sheriff's Department | 60% |
| Criminal Court Fund, 16th JDC, Parish of St. Martin | 20% |
| Office of the District Attorney | 20% |

**17.** A "material" fact is one that might affect the outcome of the suit under the applicable substantive law. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In order for a dispute to be "genuine," the evidence before the Court must be such that a reasonable jury could return a verdict for the nonmoving party. *Id., see also, Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992).

**18.** 42 U.S.C. § 1983 provides in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

should be addressed." *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). This Court must therefore first determine whether the plaintiff has "allege[d] the violation of a clearly established constitutional right." *Id.* If the plaintiff has met the first prong, the Court must then decide if the defendants' conduct violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Finally, disputed issues of material fact relevant to the officers' qualified immunity defense will preclude a grant of summary judgment in their favor. *Lampkin v. City of Nacogdoches*, 7 F.3d 430 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1400, 128 L.Ed.2d 73 (1994).

### Craig's Detention: Fourth Amendment and Due Process

█ Craig claims that his seizure and eight hour detention violated his fourth amendment rights and was not supported by probable cause. An arrest and detention without probable cause violates a suspect's Fourth and Fourteenth Amendment rights. *Sanders v. English*, 950 F.2d 1152, 1159 (5th Cir.1992); *See also Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir.1990) ("Probable cause is a defense to a § 1983 claim based on an alleged false arrest.") A police officer has probable cause to arrest a suspect if, at the time of the arrest, he had knowledge that would warrant a prudent person's belief that the person arrested had already committed or was committing a crime. *Duckett v. City of Cedar Park, Texas*, 950 F.2d 272, 278 (5th Cir.1992); *Gladden v. Roach*, 864 F.2d 1196, 1199 (5th Cir.), *cert denied,* 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989).

Craig's eight hour detention at the station is indistinguishable from an arrest and must be based on probable cause to comply with the Fourth Amendment. *Hayes v. Florida*, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985) (transportation to and brief investigative detention at police station without proba-

ble cause violates the Fourth Amendment); *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) (detention of a suspect for custodial interrogation requires probable cause). *See also United States v. Place*, 462 U.S. 696, 709–10, 103 S.Ct. 2637, 2645–46, 77 L.Ed.2d 110 (1985) ("[W]e have never approved the seizure of the person [without probable cause] for the prolonged 90–minute period involved here.").

While the defendants argue that Deputy O'Mary had probable cause to make the original traffic stop, they do not argue that the transportation to, and detention at, the station was supported by probable cause. In fact, the defendants apparently admit that probable cause for the detention was lacking. *See* Defendants' Memorandum in Support of Motion to Dismiss And/Or For Summary Judgment, at 5: "... the defendants and ADA Haney felt that there was no probable cause to effect [Craig's] arrest for any criminal activity." Instead, the defendants argue that their "well-founded suspicions" justified the detention. In light of *Hayes,* reasonable suspicion is insufficient as a matter of law to justify the detention in the present case. For that reason, Craig's wrongful detention claim survives the summary judgment test.

Moreover, the defendants are not entitled to qualified immunity for Craig's detention. While the defendants do not claim, not could they, that the detention was justified by probable cause to believe that Craig had already committed or was committing a custodial offense [19], they maintain that their detention of Craig was based on good faith suspicion. However, qualified immunity turns on the objective reasonableness of the action assessed in the light of the legal rules that were clearly established at the time it was taken. *White v. Taylor*, 959 F.2d 539 (5th Cir.1992). In 1990, it was clearly established that transportation of a suspect to, and prolonged detention at, the station was indistinguishable from an arrest and required probable cause. *See Hayes.* Because there is sufficient evidence that the defendants violated clearly established law, the court declines to grant them qualified immunity on

---

19. The possession of a large amount of U.S. Currency and a CB radio cannot, as a matter of

law, provide probable cause for a custodial arrest.

Craig's Fourth and Fourteenth Amendment claims arising out of his detention.

## Liberty or Property

■ Craig alleges that the defendants would not release him from custody until he signed the disclaimer form. Conditioning release on the waiver of property violates a suspect's right to liberty. *See Hall v. Ochs,* 817 F.2d 920, 923–24 (1st Cir.1987) (requiring detainee to sign hold-harmless to gain his release violated the Fourth Amendment); *Brewer v. Blackwell,* 692 F.2d 387, 399 (5th Cir.1982) (noting that presenting the choice between signing "such a worthless document" and staying in custody is a deprivation of the right to liberty).

The right to be free from such coercion was clearly established at the time of Craig's detention. Moreover, the alleged conduct violated clearly established Constitutional rights of which a reasonable person would have known. Because a material fact issue exists as to whether the officers conditioned Craig's release on his disclaimer of the property, the grant of qualified immunity is DENIED. *See Lampkin,* 7 F.3d 430 (5th Cir. 1993).

## Seizure of Property—Fourth Amendment and Due Process

■ Craig also maintains that the defendants wrongfully seized his property when they required him to disclaim the property to regain his liberty. A seizure of property occurs when "there is some meaningful interference with an individual's possessory interest in that property." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Assuming plaintiff's allegations to be true, the forced disclaimer of Craig's property after his unlawful detention is a seizure. Under the Fourth Amendment, state actors may not seize property without probable cause to associate it with criminal activity. *Soldal v. Cook County, Illinois,* —— U.S. ——, ——, 113 S.Ct. 538, 545, 121 L.Ed.2d 450 (1992); *Payton v. New York,* 445 U.S. 573, 586–87, 100 S.Ct. 1371, 1380–81, 63 L.Ed.2d 639 (1980); *United States v. Thomas,* 973 F.2d 1152, 1156 (5th Cir.1992).

In the present case, the deputies found a large amount of currency and some radio equipment. However, they did not locate drugs, drug paraphernalia, weapons or contraband, even with the aid of the department's drug dog. Consequently, this court concludes as a matter of law that there was no probable cause to seize Craig's property. *See United States v. $38,600.00 in U.S. Currency,* 784 F.2d 694, 698 (5th Cir.1986) ("We find that the $38,000.00 discovered in Alvaro Freitas' car, even when considered in conjunction with the pipe [bearing marijuana residue] and rolling papers and Alvaro's evasiveness concerning his destination and the money's owner, is insufficient to sustain the district court's finding [of probable cause].") *See also United States v. $80,760.00 in U.S. Currency,* 781 F.Supp. 462, 474–79 (N.D.Tex. 1991), *aff'd,* 978 F.2d 709 (5th Cir.1992) (table) (drug courier profile and drug dog alert on currency did not establish probable cause).

Furthermore, Craig claims that he was deprived of his property without due process of law. Due process of law has been the subject of many decisions. It has been urged that each term is important. The notice must be Due—that is, reasonable, fair and just. It must be a Process—not a letter or mere notice to be present or merely information that a suit is pending, but process. It must be a Process of Law—not of grace or favor arising out of the inherent instinct of the judicial officer seeking to give the notice which the State ought to have required, but the opportunity to be heard must be demandable as a right. Thus, at a minimum, Craig was entitled to a post-deprivation forfeiture hearing. *United States v. James Daniel Good Real Property,* —— U.S. ——, ——, 114 S.Ct. 492, 500, 126 L.Ed.2d 490 (1993); *Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). Furthermore, Due Process requires that Craig be given adequate notice of the forfeiture proceeding. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). Specifically, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all

the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted).

While Craig was informed of the impending forfeiture proceeding, he was not given the date on which the proceeding would be held. Moreover, the forfeiture proceeding took place on the next working day after his release at the bus station. Because Craig was neither informed of the date of the proceeding nor allowed a reasonable time to make his appearance, the notice was invalid.

Furthermore, there is a material fact issue as to the validity of Craig's waiver of notice of the forfeiture proceeding in the disclaimer form. The form was signed, according to Craig, only after an unlawful eight hour detention and threats that he would not be released until he did so. For that reason, the issues of voluntariness, as well as the validity of the waiver, preclude the grant of summary judgment against Craig's due process claim. *See Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (release-dismissal agreement, in which defendant agreed not to sue the police under § 1983 in return for the dismissal of criminal charges against him, must be voluntary).[20]

These constitutional property rights were clearly established at the date of Craig's detention. Moreover, a reasonable person would have understood that the officers actions, as alleged by Craig, would have violated those rights. Nevertheless, the underlying factual dispute precludes the grant of qualified immunity. *See Lampkin*, 7 F.3d 430 (5th Cir.1993).

### Right to Counsel

■ Craig maintains that his right to counsel, as guaranteed by the 6th Amendment, was violated when Defendant Haydel ignored his requests for an attorney. The Sixth Amendment right to counsel, however, does not attach until the initiation of judicial proceedings. *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977). Because Craig was released before the institution of formal proceedings against him, his Sixth amendment right to counsel was not violated.

■ Under the Fifth Amendment, however, a detainee subject to custodial interrogation has the right to counsel. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the remedy for a violation of a suspect's *Miranda* rights is the exclusion from evidence of any compelled self-incrimination, not a civil rights action under 42 U.S.C. § 1983. *Warren v. City of Lincoln, Nebraska*, 864 F.2d 1436, 1442 (8th Cir.), *cert. denied*, 490 U.S. 1091, 109 S.Ct. 2431, 104 L.Ed.2d 988 (1989). *See also One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S.Ct. 1246, 1248, 14 L.Ed.2d 170 (1965) (exclusionary rule applies to forfeiture proceedings). Finally, Craig's written disclaimer of knowledge or ownership of the property did not incriminate him in any way. *See Gladden v. Roach*, 864 F.2d 1196, 1198 (5th Cir.), *cert. denied*, 491 U.S. 907, 109 S.Ct. 3192, 105 L.Ed.2d 700 (1989) (custodial statements not incriminating); *Rodgers v. Lincoln Towing Service, Inc.*, 771 F.2d 194, 199 (7th Cir.1985) (same). Consequently, summary judgment is GRANTED in favor of the defendants on Craig's right to counsel claim.[21]

### Conspiracy

The defendants seek summary judgment on Craig's conspiracy claim. While Craig mentioned the existence of a conspiracy in his complaint, he has not briefed the issue

---

**20.** Mr. Cedars, counsel for Defendants Fuselier, Haydel, and O'Mary, commendably suggested at the hearing on this matter that the court could possibly, under its supplemental jurisdiction, entertain a claim based on Louisiana law to nullify the forfeiture judgment. At the time of this Memorandum, however, Craig has not sought leave to amend his pleadings to include the nullity claim.

**21.** However, Craig's requests for an attorney can be used to guide the factfinder in determining the voluntariness of his waiver.

and apparently abandoned the claim at the hearing on this matter. Consequently, this court finds that summary judgment is appropriate. This court therefore GRANTS summary judgment against Craig's conspiracy claim. *See Young v. Biggers*, 938 F.2d 565, 569 (5th Cir.1991) (bald allegations that a conspiracy existed are insufficient to defeat summary judgment).

### Individual Liability of Fuselier and Boudreaux

■ Craig has also sued Sheriff Fuselier and District Attorney Boudreaux in their individual capacities. Supervisory officials generally cannot be held liable for their subordinates' actions. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987). However, a supervisor may be held liable if there exists either: 1) personal involvement in the Constitutional deprivation, or 2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Id.* Under the second prong, "supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is repudiation of Constitutional rights and is the moving force of the Constitutional violation." *Id.* (citations omitted).

■ District Attorney Boudreaux, who was not present on the morning of March 23, had no personal involvement in the actions of which Craig complains. Furthermore, Craig has failed to support his allegations that Boudreaux adopted a policy or custom that was the moving force behind Haney's actions on the morning in question. Boudreaux specifically instructed his assistant district attorneys to avoid participation in criminal investigations.[22] *See Charbonnet v. Lee*, 951 F.2d 638, 644 (5th Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992) (policy of neutrality). Furthermore, while there is some evidence that assistants of the District Attorney had previously been called to the station, Craig has produced no evidence which suggests that there were occurrences similar to Craig's detention in the past or that Boudreaux had actual or constructive knowledge of this assistant district attorney's conduct. Because Craig has failed to establish that Boudreaux was involved with Craig's detention, either personally or through the adoption of a policy, summary judgment is GRANTED on all claims brought against Boudreaux in his individual capacity.

■ Conversely, Sheriff Fuselier was present on the morning in question. He was briefed on Craig's situation, and apparently acquiesced in the Deputies' conduct. Furthermore, the Sheriff apparently ratified their actions; when asked whether he agreed with his deputies' actions, he stated that "I would have to think that they acted properly from the evidence of what I've seen, yes."[23]. At this stage in the proceeding, therefore, there is sufficient evidence to hold Sheriff Fuselier individually liable for any offenses committed by his subordinates.

### Absolute Immunity

■ Assistant District Attorney Haney claims that absolute immunity shields him from personal liability. A prosecutor's immunity from suit depends on the function he performs, not on the position he holds. *See Burns v. Reed*, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Prosecutors are absolutely immune from personal liability under § 1983 for their conduct "in initiating a prosecution and in presenting the State's case," insofar as that conduct is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 995–96, 47 L.Ed.2d 128 (1976). However, prosecutors do not receive absolute immunity for legal advice given to the police. *Burns*, 500 U.S. at 492–96, 111 S.Ct. at 1942–45. Furthermore, prosecutors are shielded only by qualified immunity for administrative or investigative functions which are not an integral part of the judicial process.[24] *Rykers v. Alford*,

---

22. Affidavit of Boudreaux.

23. Fuselier, at 16.

24. Courts will normally presume that "qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Burns v. Reed*, 500 U.S. 478, 486–

832 F.2d 895, 897 (5th Cir.1987); *Chrissy F. v. Mississippi Dept. of Public Welfare,* 925 F.2d 844, 850 (5th Cir.1991); *Marrero v. City of Hialeah,* 625 F.2d 499, 507 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981). In *Marrero,* for example, the court held that a prosecutor was not entitled to absolute immunity for his participation in an illegal search of a jewelry store. *See also McSurely v. McClellan,* 697 F.2d 309 (D.C.Cir.1982) (same).

■ The evidence before this court establishes that Haney is not entitled to absolute immunity for his role in the detention and questioning of Craig and the seizure of his property. Haney's conduct on the morning in question is indistinguishable from that of the sheriff's officers, and is the functional equivalent of police investigation. Under *Burns* and *Marrero,* Haney is therefore not entitled to absolute immunity from suit arising out of Craig's detention and questioning.[25]

Craig also seeks recovery against Haney for his role in the preparation of the Disclaimer. Haney assisted in the preparation by "suggesting to [Dupuis] some of the necessary legal things that I felt like needed to be included." Haney at 35. Again, Haney is not entitled to absolute immunity for legal advice given to the Sheriff's officers or for purely investigative actions; he can therefore be held liable for his role in the preparation of the disclaimer. *See Burns, Marrero.*

■ Haney is absolutely immune, however, for his role in the preparation of Captain Dupuis' affidavit. The application for a seizure warrant is entitled to the shield of absolute immunity. *Schrob v. Catterson,* 948 F.2d 1402, 1413–17 (3rd Cir.1991). Under Louisiana forfeiture law, a court may issue a seizure warrant based on an affidavit. La. R.S. 40:2606. Because of the affidavit's integral role in the seizure application, this court holds that absolute immunity shields its preparation.

■ Finally, Craig maintains that Haney is liable for presenting false affidavits and a false disclaimer to the state court in the forfeiture proceeding. Similarly, Craig claims that Haney violated Craig's rights by prematurely bringing the forfeiture proceeding.[26] These activities fall under Haney's protected quasi-judicial function. A district attorney is entitled to absolute immunity for instituting and presenting the state's case in a civil forfeiture proceeding. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Schrob v. Catterson,* 948 F.2d 1402 (3rd Cir.1991).

### Official Capacity Claims

■ Craig has also sued the defendants in their official capacities. Such a claim against government officials in their official capacity is in effect a suit against the local government entity those officials represent. *Kentucky v. Graham,* 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3104–06, 87 L.Ed.2d 114 (1985), *Hafer v. Melo,* 502 U.S. 21, ——, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991). Although § 1983 does not allow recovery against a governmental body on a respondeat superior theory, a plaintiff can recover by showing that the governmental entity's policy or custom played a part in the deprivation of rights protected by the Constitution. *Hafer,* 502 U.S. at ——, 112 S.Ct. at 361, *Monell v. New York City Dept. of Social Services,* 436

87, 111 S.Ct. 1934, 1939–40, 114 L.Ed.2d 547 (1991). The official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question. *Id.*

**25.** The defendants argue that *Schrob v. Catterson,* 948 F.2d 1402 (3rd Cir.1991), requires an opposite result. This court disagrees. In *Schrob,* the court reviewed a *Bivens* claim arising out of a civil forfeiture in which the plaintiff claimed that the Assistant U.S. Attorney did not properly investigate the case before filing it. The court granted absolute immunity to the prosecutor for preparing and applying for the seizure warrant and instituting the forfeiture proceeding. The case at bar is distinguishable in that Haney participated in the questioning; his actions at the station were purely investigative. In light of *Burns* and *Marrero, Schrob* does not and cannot extend absolute immunity into the police interrogation room.

**26.** La.Rev.Stat.Ann. 40:2610 provides a thirty (30) day period in which an owner or interest holder may file a claim in seized property.

U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978).

■ Specifically, there are two factual bases which can lead to governmental liability for the acts of its officials. "In the first ... a municipality's final policymakers are held effectively to have made policy or condoned the creation of a custom by ratifying the unconstitutional or illegal actions of subordinate officers or employees. In the second, the municipality may be held liable for the illegal or unconstitutional actions of its final policymakers themselves as they engage in the setting of goals and the determination of how those goals will be achieved." *Turner v. Upton County, Texas*, 915 F.2d 133, 136 (5th Cir.1990), *cert. denied*, 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991). *See also, Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Finally, the only immunities available to the defendant in an official capacity action are forms of sovereign immunity that the governmental entity, qua entity, may possess, such as the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); *Hafer*, 502 U.S. at ——, 112 S.Ct. at 361, *Owen v. City of Independence*, 445 U.S. 622, 635–58, 100 S.Ct. 1398, 1407–19, 63 L.Ed.2d 673 (1980).

### Sheriff's Department

■ Initially, the Court must identify those officials whose decisions represent the official policy of the local government unit. State law guides this determination which the Court makes as a matter of law. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989). Under Louisiana law, the sheriff is a final policymaker. *See* LA. CONST. ART. 5, § 27 ("[The sheriff] shall be the chief law enforcement officer in the parish."); LA.REV. STAT.ANN. 33:1435 ("Each sheriff ... shall preserve the peace and apprehend public offenders.")

In the present case, Craig has produced evidence that the Sheriff was present during the detention and ratified the Deputies' conduct at his deposition. Consequently, summary judgment in favor of the Sheriff and his Deputies in their official capacities is inappropriate.

### District Attorney's Office

■ However, the Court finds that summary judgment in favor of the District Attorney and Assistant District Attorney in their official capacities is appropriate. Assuming that the District Attorney can be considered the final policymaker for prosecutorial decisions,[27] Craig has failed to support his claim that Haney's actions were taken pursuant a custom or policy of the District Attorney. As discussed, *supra*, DA Boudreaux was not present on the morning in question. Furthermore, while not maintaining a written policy, he instructed his assistant district attorneys to avoid participation in criminal investigations. Finally, although his assistants were occasionally called to the station, the plaintiff has not offered any proof that incidents similar to the case at bar occurred during those visits. Because there is no evidence that Boudreaux ratified a custom or instituted a policy which caused the violation of Craig's Constitutional rights, summary judgment is GRANTED in favor of Boudreaux and Assistant District Attorney Haney in their official capacities.[28]

### Improper Training and Supervision

■ Craig also seeks recovery for the alleged failure of District Attorney Boudreaux and Sheriff Fuselier to train and/or supervise their subordinates. To establish a claim for failure to train, a plaintiff must show that: 1) the supervisor failed to super-

---

27. *See, e.g. Mairena v. Foti*, 816 F.2d 1061 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988) (affirming § 1983 judgment against Louisiana District Attorney in his official capacity).

28. Consequently, this court need not address the Eleventh Amendment defense raised by Bou-

dreaux and Haney in their official capacities. *See Mairena v. Foti*, 816 F.2d 1061, 1064 n. 1 (5th Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 697, 98 L.Ed.2d 649 (1988) (Louisiana District Attorney not entitled to Eleventh Amendment immunity).

vise or train the subordinate officer, 2) the failure to supervise or train must be closely related to the violation of the plaintiff's rights, and 3) such failure to supervise or train amounted to deliberate indifference. *See City of Canton v. Harris,* 489 U.S. 378, 388–92, 109 S.Ct. 1197, 1205–07, 103 L.Ed.2d 412 (1989); *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir.1986). A single incident, standing alone, is insufficient as a matter of law to establish a failure to train violation. *See Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Instead, a plaintiff must demonstrate "at least a pattern of similar incidents in which citizens were injured or endangered by ... police misconduct and/or that serious incompetence or misbehavior was general or widespread throughout the police force." *Rodriguez v. Avita,* 871 F.2d 552, 554 (5th Cir.), *cert. denied,* 493 U.S. 854, 110 S.Ct. 156, 107 L.Ed.2d 114 (1989) (quoting *Languirand v. Hayden,* 717 F.2d 220, 227–28 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984)).

In the present case, the plaintiff has not met that burden with respect to District Attorney Boudreaux; he has simply failed to establish a pattern of incidents similar to Haney actions on March 23, 1990. For that reason, summary judgment is GRANTED in favor of Boudreaux on Craig's claims for failure to train or supervise.

 However, the court finds that summary judgment in favor of Sheriff Fuselier on Craig's failure to train claim or supervise is inappropriate. A court may take judicial notice of related proceedings and records in cases before the same court. *MacMillan Bloedel, Ltd. v. Flintkote Co.,* 760 F.2d 580, 587 (5th Cir.1985). In *Thomas v. Frederick,* 766 F.Supp. 540 (W.D.La.1991), this court reviewed a § 1983 claim against the St. Martin Sheriff Parish Department and Sheriff Charles Fuselier. The court found: "In the instant case, it has been well established that repeated and widespread abuses have occurred in the St. Martin Parish Sheriff's Department, that these abuses have been brought to the attention of Sheriff Fuselier, and that he has repeatedly failed to respond to them in even the most minimal fashion ... [Sheriff Fuselier] was deliberately indifferent in managing his subordinates." *Thomas,* 766 F.Supp. at 556. In light of *Thomas,* summary judgment in favor of Sheriff Fuselier on the failure to train or supervise claim is DENIED.

### Parratt/Hudson

 The defendants maintain that *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), and their progeny bar Craig's claims. *Parratt* held that a plaintiff who alleges a deprivation of property as a result of a random and unauthorized act of a government official fails to state a constitutional violation if the plaintiff seeks a postdeprivation remedy and one is provided by the state. *Id. Parratt* does not apply if the plaintiff claims a violation of a substantive constitutional right, such as a right secured by the Bill of Rights or protected under substantive due process. *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100 (1990); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir.1986). Therefore, *Parratt* cannot bar Craig's Fourth Amendment claims.

 *Parratt* will bar a **procedural** due process claim if: 1), the deprivation is unpredictable; 2) predeprivation process is impossible, making any additional safeguard useless; **and,** 3) the conduct of the state actor is unauthorized. *Zinermon,* 494 U.S. at 137–39, 110 S.Ct. at 989–91. The third condition is most important, *Charbonnet v. Lee,* 951 F.2d 638, 644 (5th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 2994, 120 L.Ed.2d 871 (1992), and defeats the application of *Parratt* to the plaintiff's Fourteenth Amendment claims. Viewing the evidence in the light most favorable to the plaintiff, the court finds a material and genuine fact issue exists as to whether the actions on the morning in question were taken pursuant to a Sheriff's department policy. *See supra.* Consequently,

there is necessarily a material fact issue as to whether these actions were authorized. For that reason, the *Parratt–Hudson* doctrine cannot bar the plaintiff's Fourteenth Amendment claims.

## Collateral Estoppel and Res Judicata

■ The defendants assert that the state forfeiture proceeding held three days after Craig's detention precludes Craig from claiming ownership of the automobile and cash or challenging the existence of probable cause for the forfeiture.[29]

■ Under the Full Faith and Credit clause of the Constitution and its implementing statute, 28 U.S.C. § 1738,[30] a Federal court must give to a state court judgment the same preclusive effect that a court of the state in which the judgment was rendered would give it. *Migra v. Warren City School Dist. Bd. of Education*, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). This rule applies in all Federal litigation, including actions brought under 42 U.S.C. § 1983. *Migra*, 465 U.S. at 85, 104 S.Ct. at 898. Therefore, the question turns on whether Louisiana courts would give preclusive effect to the state forfeiture proceeding.

The doctrine of collateral estoppel does not bar Craig from relitigating any issue adjudicated in the state forfeiture proceeding. Collateral estoppel did not exist in Louisiana law before the 1990 amendments of LA.REV.STAT.

ANN. 13:4231. *Welch v. Crown Zellerbach Corp.*, 359 So.2d 154, 157 (La.1978); *S.J. v. P.M.*, 586 So.2d 662, 665 (La.Ct.App.1991). Although the 1990 amendments of § 4231 contain an issue preclusion provision[31], the revised statute does not apply to civil actions filed before January 1, 1991. *Id.* Because this suit was filed on August 28, 1990, the defendants' assertions of collateral estoppel must fail.

■ The Defendants also claim that Res Judicata bars the plaintiff's suit. Civil law res judicata, as set out in LA.REV.STAT.ANN. 13:4231[32], applies only to issues raised for decision by the parties and actually decided by the court. *Watts v. Graves*, 720 F.2d 1416, 1421 (5th Cir.1983); *Williams v. Divittoria*, 760 F.Supp. 564, 567 (E.D.La.1991). Additionally, the doctrine of res judicata applies only when the subsequent action is: 1) between the same parties, 2) based on the same cause of action, and 3) the thing demanded (relief) is the same. *Gross v. Continental Insurance*, 451 So.2d 1285, 1287 (La. Ct.App.1985); *Brister v. Parish of Jefferson*, 747 F.2d 1019, 1021 (5th Cir.1984), *cert. denied*, 471 U.S. 1101, 105 S.Ct. 2327, 85 L.Ed.2d 845 (1985); *Williams*, 760 F.Supp. at 567. If doubt exists that any of these criteria are satisfied, Louisiana does not bar relitigation. *Williams*, at 567.

Res judicata does not bar the present claim. The forfeiture proceeding, held three days after the traffic stop, did not adjudicate Craig's § 1983 claims. Furthermore, the suits involve different causes of action: the

---

29. Of course, the discussion of the possible preclusive effects of the forfeiture proceeding will become moot if it is determined that Craig neither received nor voluntarily waived notice to the forfeiture proceeding. *See World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980) (judgment rendered in violation of due process is void).

30. 28 U.S.C. § 1738 provides in part: "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

31. LA.REV.STAT.ANN. 13:4231(3), as amended in 1990, provides: "A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment."

32. LA.REV.STAT.ANN. 13:4231, as is existed prior to 1990, and which applies to this case, provided: "The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."

forfeiture suit sought a determination that probable cause to seize the money existed, while the present suit seeks redress under § 1983 for the alleged violation of Craig's Constitutional rights. *See e.g. Mitchell v. Bertolla,* 340 So.2d 287 (La.1976) (suit to rescind lease for fraud held not the same cause of action as, and therefore not barred, by prior suit under same lease for nonpayment of rent); *Watts,* 720 F.2d at 1421–22 (guilty plea to state drug charge did not bar a subsequent § 1983 suit challenging the legality of the search which recovered the drugs.) In conclusion, the doctrines of collateral estoppel and Res judicata do not bar plaintiff's claims.[33]

### State Claim

■ Finally, Craig seeks recovery against Sheriff Fuselier in his official capacity under the Louisiana doctrine of Responde-at Superior. *See Jenkins v. Jefferson Parish Sheriff's Office,* 402 So.2d 669 (La.1981) (holding Sheriff vicariously liable for the torts of his deputies). Because genuine issues of material fact exist as to Craig's claims against the deputies, summary judgment in favor of Sheriff Fuselier on this claim is DENIED.

### Conclusion

As discussed above, the defendants' motions are DENIED in part and GRANTED in part. It is so ORDERED.

---

**33.** This court will not allow the Louisiana forfeiture proceeding to bar Craig from seeking redress for alleged constitutional violations when Louisiana's state courts would apply no preclusive effect to the proceeding.